## Ann J. Fox

*v.*

## Wilber S. Peck *et al.*

*Filed at Ottawa, June 19, 1894.*

1. Fraudulent Conveyance—*conversion of debtor's equitable estate to defraud creditors.* In 1878, A. contracted with B. and C. for the purchase of a lot at the price of $2,400, payable in two installments of $1,200 each, payable in two and three years with 8 per cent interest. The contract was in writing, and was duly recorded, and it provided for forfeiture for non-payment at the election of the vendors. A. took possession and erected a dwelling house on the lot, costing $11,000, and occupied the same as his homestead. On January 12, 1886, D. obtained a judgment against A. for $4,718, and sued out execution thereon, which on the next day was levied on the interest of A. in the lot, and a certificate of levy was duly recorded. Afterwards, and on the same day, a bank obtained a judgment against A. for $2,525, which was a junior lien. A. paid all the interest on the notes given to his vendors up to January 24, 1886, but no part of the principal. On April 17, 1886, the vendors declared the contract of purchase forfeited for non-payment, and filed for record a declaration of such forfeiture, and on the same day conveyed the premises to W., the president of the bank, for the expressed consideration of $2,500, and he on the same day conveyed the premises to the wife of A. for the expressed consideration of $5,000, warranting against his own acts, and the wife gave her five notes to the bank of $1,000 each, secured by deed of trust on the lot, which deeds were duly recorded. At the time of the declaration of forfeiture, the property was worth over $11,000: *Held,* that the transaction was fraudulent as against D. and the other creditors of A.

2. Same—*proper decree on setting aside the conveyances.* On bill by a judgment creditor to subject the debtor's equitable title to the land, to the payment of his judgment indebtedness, the executors of the payee of the five notes became parties, and filed their cross-bill to foreclose the deed of trust, they claiming priority to other liens as *bona fide* holders of the notes secured by the trust deed; the court found the transaction fraudulent, as alleged in the original bill, and decreed that the premises should be sold, and upon sale being made, the amount due on the notes secured by the trust deed, and for taxes, etc., should first be paid to the executors filing the cross-bill, and next, $1,000 should be paid to the wife of A. for her homestead, if the same should not be assigned, and next, the judgment of the complainant in the original bill should be paid: *Held,* that the decree was not erroneous as against the wife of A.

3. Practice in Supreme Court—*error not affecting party complaining.* A party appealing can not be heard to complain of an error affecting alone a party who does not appeal.

Appeal from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will County; the Hon. Dorrance Dibell, Judge, presiding.

Mr. George S. House, for the appellant.

Mr. J. K. Wilson, for the appellees.

Per Curiam:

A careful and painstaking consideration of the record in this case, upon this appeal, has failed to convince us that the conclusion reached by the Circuit and Appellate Courts was erroneous. No useful purpose would be served by additional discussion of the errors assigned. Regarding, as we do, the opinion of the learned justice of the Appellate Court as amply meeting the material objections raised, for the reasons therein set forth, the judgment of the Appellate Court will be affirmed. That opinion, so far as it relates to this appeal, is as follows:

"Opinion by Cartwright, P. J.:

"Appellees, who constituted the firm of W. S. Peck, Bro. & Co., filed the original bill in this case to set aside a transaction whereby the legal title to certain premises in Joliet, Illinois, was vested in appellant, Ann Jane Fox. The bill alleged that appellees had acquired a lien upon an equitable interest of Osmond Fox in said premises, and charged that such equitable interest had been fraudulently converted into the legal estate in Ann Jane Fox, wife of said Osmond Fox. The executors of Otis Hardy, deceased, were admitted on their petition as defendants, and filed a cross-bill to foreclose a trust deed of said premises executed by Ann Jane Fox, claiming priority to other liens as *bona fide* holders

of the notes secured by the trust deed. The cause was heard on the issues made under the original bill and cross-bill upon the pleadings and proofs. The court found the transaction fraudulent, as alleged in the original bill, and also granted relief to the executors of Hardy, complainants in the cross-bill, according to the prayer of said cross-bill. It was decreed, that the premises should be sold, and upon sale being made, the amount due on the notes secured by the trust deed and for taxes and insurance, aggregating $5,540.30, with costs and $100 solicitor's fee, should be first paid to the executors of Hardy, and next, $1,000 should be paid to Ann Jane Fox for homestead, if the homestead should not be assigned, and next, the judgments of complainants in the original bill should be paid. The case of *Wilber S. Peck et al.* v. *Nichols D. Dyer et al.*, submitted at the present term, is an appeal from the decree granting relief on the cross-bill. This appeal brings up for review the action of the court on the original bill.

"The facts established by the evidence are as follows:

"On January 24, 1878, Osmond Fox contracted with William A. Strong, Jr., and Charlotte A. Strong, for the purchase from them of the premises in question for $2,400, payable in two and three years, in installments of $1,200 each, evidenced by promissory notes drawing interest at eight per cent, payable annually. The contract was in writing under seal, and provided for forfeiture for non-payment at the election of the vendors, and was duly recorded. Osmond Fox went into possession of the premises under the contract, and erected a dwelling house thereon at a cost of $11,000, and has ever since lived there with his family. On January 12, 1886, complainants in the original bill obtained [judgments in the Circuit Court of Cook county, Illinois, against Osmond Fox, amounting to $4,718.58, and sued out executions thereon, which were, on January 13, 1886, levied on the interest of said Osmond Fox in said premises, and certificates of levy were filed in

compliance with law at 12:40 P. M. on the day of such levies. After the filing of the certificates of levy, and on the same day, the First National Bank of Joliet recovered judgment against Osmond Fox for $2,525 and costs, and other judgments against him were entered on said day, but all such judgments were junior liens to those obtained by said levies by virtue of the executions from Cook county. Osmond Fox paid the interest from time to time on the notes given for the purchase of the premises. The interest was paid by him in full to January 24, 1886, but he paid no part of the principal. On April 17, 1886, the Strongs declared the contract of purchase forfeited for non-payment, and filed for record a declaration of such forfeiture, and on the same day conveyed the premises by warranty deed to Frederick W. Woodruff, who was president of said First National Bank of Joliet. The consideration expressed in that deed was $2,500. On the same day of the conveyance to said Frederick W. Woodruff, he conveyed the premises to Ann Jane Fox for the expressed consideration of $5,000 by special warranty deed, whereby he warranted against his own acts. The only consideration for the deed to Ann Jane Fox was the execution by her, of her five promissory notes for $1,000 each, payable to said Woodruff at said bank, and which notes she secured by trust deed on said premises to Edward C. Hagar, who was attorney for said bank. These conveyances were duly recorded. At the time of the declaration of forfeiture, the premises were worth all that they had cost, and more, so that at the time of such forfeiture and conveyances, the equitable interest of Osmond Fox therein was worth at least $11,000, the cost of the house.

"A paper was offered in evidence, purporting to extend the time of payment of the principal sum under the contract of purchase, but the paper was without date and was never recorded. The principal became due in January, 1880 and

1881, and the paper purported to extend it from January 24, 1885, to January 24, 1886.

"Counsel for appellant insists, that the foregoing facts clearly proven are merely matters of suspicion; but we think, that when the relations of the parties to the transaction are duly considered in connection with the facts, especially such as the sudden development of a disposition on the part of the Strongs to forfeit a contract when they were secure and receiving a high rate of interest, the conveyance to the bank president for about the amount due the Strongs, the sudden appreciation of value on the same day in the hands of the bank president by about the amount of the bank judgment, and the conveyance by special warranty deed to Fox's wife for about the aggregate of those two claims, when the property was worth three times the consideration, the circumstances are well calculated to produce a conviction in accordance with the finding of the court. Osmond Fox accepted, without objection, a declaration of forfeiture, which, in the ordinary course of things, would make him and his family immediately homeless, and he testified, that when he accepted it he had no idea that the property would be transferred to his wife, and that he was nearly crazy with financial troubles. It is more than likely, that if he did not know definitely the precise course that matters would take, he was trusting to some one less guileless and more rational than he, and knew that what would be done would be in his interest.

"Without discussing all the facts, we will content ourselves with saying, that we are satisfied that the court was right in the conclusion that the transaction was fraudulent as to creditors.

"But it is contended, that inasmuch as the lien secured by appellees extended only to the property rights of Osmond Fox fixed by the contract, and which must be worked out through him, and as his estate was equitable in premises to

which the Strongs held the legal title, and such equitable estate was liable to be defeated and destroyed at the option of the Strongs, and was so defeated and destroyed under a legal right to do the act, therefore the act can not be further inquired into. It is said, that when a legal right to do an act appears, the law deals with the ascertained right, and judicial inquiry ends. Whether that is so or not, there has been in this case no attempt to interfere with the Strongs or with their legal rights. They received their pay, and are making no complaint. All parties recognized the claim for purchase money, whatever form it may have taken or whoever held it as a first lien. The original bill was designed to subject the property to the payment of a lien existing before the fraudulent conveyances upon an equitable estate in the property which has been fraudulently transferred to Fox's wife. The question raised was not whether the equitable estate of Osmond Fox could be defeated by the Strongs, and the whole title vested in them in good faith, but whether the valuable interest of Osmond Fox in the property could be given to his wife as against creditors when he was insolvent. The Strongs did not ask or receive any pay for the equitable interest. The bank president only levied tribute on the equitable estate to the extent of the bank judgment, and the object of the whole scheme was to defeat other creditors. No reason appears why the transaction was not a proper subject of investigation. * * * * * * * * * * * *

"It is also objected, that the homestead should have been decreed in Osmond Fox instead of Ann Jane Fox, in case the transaction was found invalid. If that was an error, it was an error against Osmond Fox, and he has not appealed or assigned errors, and it will not be considered.

"The decree on the original bill is not, we think, subject to any objection made, and it will be affirmed."

*Judgment affirmed.*